## SINCLAIR *vs.* PEARSON.

WHERE the servant of a bailee to keep for hire, takes and uses the goods bailed in the business in which he is employed by the bailee, his master is liable for any loss or damage resulting to the goods from the carelessness of the servant while so used, although no express assent of the master is shown.

CASE. The first count in the declaration, alleged that the plaintiff had delivered to the defendant a certain mare

of the plaintiff, to be safely kept and boarded, and that the defendant, while the mare was in his keeping, by his servant, so carelessly, negligently, and with such unreasonable swiftness, rode the said mare, that she ran and struck with great violence against a horse and chaise in the highway, whereby she was injured, and died. There was a second count in trover for the mare.

At the trial, in the common pleas, it appeared, that in August, 1831, the mare in question was placed with the defendant, to be kept during the term of the court at Exeter, for which the defendant was paid ; that during the time the mare was so kept, one James Rundlet, a boy in the employ of the defendant, rode the mare to the defendant's pasture, for the purpose of driving home his cows, that being the business in which he was employed ; and that on his return, by his carelessness, the mare was run against by a chaise passing in the road, and injured so that she died.

There was evidence tending to show that one Daniel Pearson, who was also in the employ of the defendant, and had charge of the defendant's business, bridled the mare upon that occasion, and put Rundlet upon her ; but it did not appear that the defendant had any knowledge of the transaction, he being absent at the time the injury happened.

The court instructed the jury, that if the mare was in the keeping of the defendant, and Rundlet took the mare from the stable without authority from the plaintiff, and without direction from any one ;—or if he took her by the direction of Daniel Pearson, who lived with the defendant, and had charge of his business ;—and used her in driving home the cows, in which business Rundlet was employed by the defendant ; and the mare was injured by his carelessness, while he was so using her, the defendant was answerable, in this action, for the acts and negligence of Rundlet, while thus in his employ.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, on account of misdirection.

*G. Sullivan*, for the defendant, argued that the master was not liable for the wilful act of his servant. 1 *Chitty's Pl.* 67; 1 *East's Rep.* 106, *M'Manus* vs. *Crickett;* 2 *Kent's Com.* 260; 17 *Mass. R.* 508, *Foster* vs. *Essex Bank;* 2 *Sel. N. P.* 841; *Noy's Maxims, ch.* 44—and that the injury in this case was the result of a trespass by the servant, for which the defendant was not answerable. 5 *D. & E.* 648, *Day* vs. *Edwards;* 8 *do.* 190, *Ogle* vs. *Barnes.*

*James Bell*, for the plaintiff, contended that the wrong complained of was not any wilful act of the servant, but his negligence, and that the master was responsible, 9 *Wend. Rep., Denison* vs. *Seymour;* that the present case was like that of an agister of cattle, who is responsible for the negligence of his servants, and the case, *M'Manus* vs. *Crickett*, therefore, was not in point; and that where the act of the servant was a trespass as to himself, the master might be liable in case.

PARKER, J. That the mare of the plaintiff was put into the possession of the defendant, to be kept a certain period, for a reward, and that she was injured, while in the possession of a servant of the defendant, under such circumstances that the defendant must have been held liable, had he himself had the actual possession at the time, is established by the case, and seems not to be controverted.

If, however, the mere relation of master and servant was in question, the argument of the defendant's counsel, that the act of the servant in taking possession of the mare was a wilful trespass, so that the master is not answerable for that, or the subsequent negligence of the servant, might perhaps be maintained.

Thus, if a master sends his servant on an errand, without providing him with a horse, and the servant takes one, and rides it in the doing of such errand, and an injury happens

in consequence, the master is not liable in an action for damages by the party injured.   3 *Car. & Payne* 167, *Goodman* vs. *Kennell;* 1 *Moore & Payne,* 241, *S. C.*   But, having taken the horse with the assent of his master, the latter was held chargeable.

So, if a servant driving a carriage, in order to effect some purpose of his own, wantonly strike the horses of another person, and thereby produce an accident, the master will not be answerable.   But if in order to perform his master's orders, he strikes, but injudiciously, the master will be liable, being an act done in pursuance of the servant's employment.   4 *Barn. & Ald.* 590, *Croft* vs. *Alison.*

And it has been held that a master is not liable, in trespass, for the wilful act of his servant, as by driving his master's carriage against another, done without the direction or assent of the master.   But he is liable to an action, for damages arising to another from the negligence or unskilfulness of his servant, acting in his employ.   1 *East* 106, *M'Manus* vs. *Crickett.*

The act of the servant, Rundlet, in this case, in taking the mare to use, in driving the defendant's cows, does not appear to have been done in pursuance of any express direction or authority from the defendant; and whether it was of his own motion, or by direction of Daniel Pearson, who was another servant, the defendant might perhaps come within the principle of the cases cited, notwithstanding the mare was used while Rundlet was performing service for the defendant, had not the defendant owed a duty to the plaintiff, by reason of his being, at that time, a bailee of the mare.

The defendant does not stand simply in the relation of a master whose servant has unlawfully interfered with the property of another without his consent.

He was a bailee of the mare, to keep for a reward, and as such, in addition to the ordinary responsibility of a master for the acts of his servants, the defendant had imposed on

him a duty, arising from his contract with the bailor, whereby he became answerable to a certain extent for the acts and negligence of himself, and his servants, about the property bailed; and the mare, while thus in his custody as bailee, was taken by his servant, and used in that business of the defendant about which the servant was employed, and while so used was injured through the carelessness of the servant.

And the question arises, whether, under such circumstances, the defendant may discharge himself from responsibility as bailee, and as master, by alleging that the act of the servant, in using the property bailed, was not by his direction, but an unauthorized trespass of the servant.

A bailee is not answerable for all the acts of those in his employ, injurious to the bailor.

Thus, it has been held, where goods bailed for safe custody, a reward being paid for house room, were stolen by the servants of the bailee, that the bailee was not answerable, he having taken as much care of them as of his own. 1 *Esp. Rep.* 315, *Finnucane* vs. *Small.*

So, where a cask, containing a quantity of gold coin, was deposited in a bank for safe keeping, without reward, and the gold was fraudulently taken out by the cashier of the bank, it was holden that the bank was not liable to the depositor for the value of the gold so taken. 17 *Mass.* 479, *Foster* vs. *Essex Bank.*

And it has even been held, that a warehouseman, not chargeable with negligence, is not responsible for goods entrusted to him, stolen or embezzled by his storekeeper or servant. 9 *Wendell* 268, *Schmidt* vs. *Blood.*

In *Clark* vs. *Earnshaw, Gow's Rep.* 30, where the defendant's servant, who slept in his master's shop for the purpose of protecting the property in it, stole a chronometer entrusted to the defendant to be repaired, with some watches, part of which belonged to the defendant himself, the

defendant was held liable for the value of the chronometer, he having, at the time the theft was committed, deposited the principal part of his own property in an iron chest, in the same shop, which could not easily have been, and was not, broken open. The report states that Dallas, C. J., was of opinion that the defendant was bound to protect the property against depredation from those who were within the house—but the circumstance that he had taken care of his own property, by locking up and securing it, seems to have been particularly relied on.

It is perhaps a sound principle, that bailees generally should not be held liable for the larcenies of those in their employ, without circumstances of special negligence, or special trust of the servant, by the bailee, in relation to the article bailed. A different rule exists in the cases of common carriers, and of innkeepers when the goods are *infra hospitium;* but this has been adopted from principles of policy, which have been supposed to render it necessary.

Mr. Justice Story, in his very lucid and elaborate Commentaries on Bailment, 266, lays down the general principle, that " the master is not responsible for any wilful or 'malicious injury done by his servant, without his know-'ledge or consent ; but only for injuries which are done by 'the servant in the master's service, in the course of his 'employment ;"—and in illustration of the principle puts the case, that " if the servant of a blacksmith in shoeing 'a horse negligently injures him, the master is responsible. 'But it will be otherwise, if he maliciously drives a nail 'into the horse's foot, in order to lame him."

That the master is not liable for injuries done by one who is his servant, disconnected from and independent of his employment in his master's service, will not be doubted ; (1 *Black. Com.* 431) but it is perhaps not perfectly clear, that a bailee is not in some cases liable for a wilful and malicious injury done by his servant to the article bailed.

Chief Justice Reeve, in the course of some strictures

upon the decision in M'Manus vs. Crickett, puts this very case of an apprentice, entrusted by the master to shoe a horse, wilfully driving a nail into his hoof with a view to lame him ; and believes " it will not be thought that the master is not liable." *Reeve's Dom. Rel.* 360.

And if the master commits the property of another to his servant, who, while executing his master's commands, does a wilful injury to the property, it would seem but a dictate of common justice, that the master who entrusted him should bear the loss, and not the owner, who trusted not the servant, but the master. The servant in such cases is usually irresponsible.

The general principle is, that a bailee for hire, whether the bailment be for use, custody, or services and labor, is bound to exercise ordinary care and diligence about the thing bailed, and that he is responsible for ordinary negligence. *Story on Bailment*, 264, 280, 289.

" If a man hire a horse, he is bound to ride it moderately ' and to treat it as carefully as any man of common discre- ' tion would his own, and to supply it with suitable ' food."

"And the hirer is not only liable for his own personal ' default and negligence, but for the default and negligence ' of his servants and domestics about the thing hired. If, ' therefore, a hired horse is ridden by the servant of the ' hirer so immoderately that he is injured or killed thereby, ' the hirer is personally responsible. So, if the servant of ' the hirer carelessly and improperly leaves open the stable ' door of the hirer, and the horse is stolen by thieves, the ' hirer is responsible therefor." *Story on Bailment*, 265.

If the hirer is bound to ride the horse moderately, and treat him carefully, and is answerable for the default of his servants, as well as his own, he must be liable if the servant wilfully rides the horse immoderately or deprives him of suitable food. With what propriety could it be said, that the master, who received the horse on an express or implied

undertaking that he should be carefully used and fed, should escape from his contract because the servant whom he employed, and on whom he relied to carry his contract into effect, was malicious and wilful. The master undertakes in such case that his servant, as well as himself, shall exercise ordinary diligence and care.

" Where skill, as well as care, is required in performing ' the undertaking, then, if the party purport to have skill ' in the business, and he undertakes for hire, he is bound, ' not only to ordinary diligence in preserving the thing, but ' also to the exercise of due and ordinary skill in the em- ' ployment of his art or business about it ; or, in other ' words, to perform it in a workmanlike manner." *Story on Bailment*, 280.

The blacksmith, who receives a horse to shoe, undertakes for such care and skill, and it would seem had not fulfilled his contract if he commits the horse to a servant who refuses to exercise either. And so of various other cases.

In the case of hire of work, the bailee is liable for misfeasance, as well as non-feasance. *Story*, 284. And the contract of the bailee is not satisfied, nor the bailment ended, when he has delivered the goods to a servant ; but he is still answerable that the same care, and diligence, and skill, shall be exercised, that he would have been bound to exert had he retained the property in his own hands.

Agisters of cattle, and hostlers, are responsible for ordinary negligence. And it will be such negligence if an agister, or his servant, leave open the gates of his field, in consequence of which neglect the cattle stray and are stolen. *Jones on Bailment*, 91 ; *Story*, 289 ; *Holt's N. P. Rep.* 547, *Broadwater* vs. *Blot*.

In this last case C. J. Gibbs says, " If there were a want ' of due care and diligence generally, the defendant will be ' liable. The question is, were the defendant's fences in an ' improper state at the time the horse was taken in to agist ? ' Did he apply such a degree of care and diligence to the

'custody of the horse, as the plaintiff, who entrusted the 'horse to him, had a right to expect?''

If a servant, entrusted by his master with the care of a hired horse, or of one taken to be dressed and fed in his master's stable, intentionally leave open the gates or doors, that is a wilful wrong; but is the care required by the contract, and which the owner had a right to expect, bestowed in such case; and if not, on whom ought the loss to fall—upon the master or the owner?

The servant who carelessly leaves open the gate, so far from acting according to the authority given him by his master, or in the course of his duty as a servant, is, perhaps, neglecting the very duty entrusted to him; and yet the master is answerable, notwithstanding the servant, in leaving open the gate, may have violated his express command.

It is evident, therefore, that the liability of a bailee, for a loss occasioned by the act of a servant, cannot be made to depend upon the question whether the act was wilful or otherwise; or whether the servant, in committing it, was doing, or forbearing, what his master had directed; for if that were the criterion, the bailee would never be liable for the act or neglect of his servant, unless done by his command, either expressed, or in fact to be inferred; but it must depend upon the question whether the degree of care and diligence required about the preservation, safe keeping, &c. of the thing bailed, has been exercised by master and servant. 8 *D. & E.* 533, *Ellis* vs. *Turner & a.*

If the bailee of a horse to ride to a particular place, ride in a different direction, to another place, he is not only answerable for all damages, even if they occur through inevitable accident, but is liable in trover. *Story*, 262; *Jones*, 68, 122; 5 *Mass. Rep.* 104, *Wheelock* vs. *Wheelwright*; 3 *Pick.* 492, *Homer* vs. *Thwing*; 3 *Stark. Ev.* 1493.

Suppose, having hired the horse for a particular journey he commits the horse to a servant, with directions to perform the journey, and the servant deviates, and goes to an

entire different place, for the purpose of transacting other business of the master, and the horse is lost by his negligence while so absent. The servant, from the time he departed from the route, might be said to act no longer in pursuance of the authority given him in that particular case; and yet shall the bailor have no remedy upon the master, whom alone he trusted, because the departure was an unauthorized and wilful act of the servant, who was trusted by the bailee?

Is not the bailee as much bound that the horse shall be used for the purpose for which he was hired—as well as carefully used—after he has committed him to his servant, as he was before?

Had the master himself deviated from the route, he would have been liable, even without subsequent negligence. Had the servant, instead of going another route, immoderately ridden the horse, the master, it has been seen, would have been answerable; but this act would have been quite as great a departure from the due course of his duty.

In the case now under consideration, although it does not appear that the loss of the mare was occasioned by any thing done in pursuance of the express directions of the defendant, it is found, that after the mare was in his custody as bailee, and while he was thus bound to ordinary care for her safe keeping, he leaves her within the control of his servants, one of whom not only uses her in that part of the defendant's service which he was employed to perform, but is so careless and negligent in the management of her that she is injured and lost.

The bailee is the person to exercise control over his servants in relation to the property bailed. It is apparent that the bailor cannot do it. And although the bailee may not be liable for a loss arising from a theft by a servant not specially entrusted by him with the property, nor for a personal conversion by such servant to his own use, separate and distinct from his employment, we are of opinion, that the

taking and using of the property, by the servant, in the business of the bailee, is not such a conversion to the use of the servant, personally, that the bailor is precluded from treating the property as still in the custody of the bailee ; and that the bailee is liable for the carelessness of the servant while so used.

When the master so far neglects a personal care and superintendance of the goods bailed, that they pass into the hands of his servants, and are used in his business, and so carelessly managed as to suffer injury in consequence, we think he cannot shield himself under the plea that these things were without his knowledge or assent ; but that this constitutes a case of negligence, for which he is responsible.

The defendant is not entitled to say, that his servant, by taking the mare from his stable, to use in his business, had so deprived him of the custody as to put an end to the bailment, and exonerate him from responsibility for any subsequent negligence of the servant. This could not terminate the contract of bailment, except at the election of the bailor.

In this view of the case it becomes unnecessary to decide whether the act of the defendant's servant, in taking and using the mare in his master's service, is not of itself sufficient to charge the defendant.

Perhaps there may be adequate reasons for intending that such use, in a case like this, is by the master's assent, so as to charge him in a trover for a conversion ; (1 *Ld. Raym.* 264, *Turberville* vs. *Stampe ;* 2 *Lev.* 172, *Michael* vs. *Alestree*) or for holding him answerable for negligence, on account of his not having prevented the property from being thus used in his service, by those over whom he is bound to have some control. *Pothier on Obligations*, n. 121.

*Judgment for the plaintiff.*